**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**LETHA F. BARNES**

**Plaintiff,**

**vs.** **CIVIL ACTION NO. 03-0850-CG-M**

**CROWNE INVESTMENTS, INC.,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the motion of defendant, Crowne Investments, Inc., ("Crowne") for summary judgment (Doc. 25), plaintiff's response thereto (Doc. 30), and defendant's reply (Doc. 33). For the reasons stated below, the court finds that plaintiff has not proffered sufficient evidence to demonstrate a genuine issue as to any material fact. As such, the court finds that summary judgment is due to be GRANTED in favor of defendant, Crowne Investments, Inc.

**FACTS**

Defendant, Crowne Investments, Inc., maintains a long term health care facility in Brewton, Alabama, known as West Gate Village LLC. (Manninc Decl. ¶ 3). Plaintiff, Letha Barnes, is African American. Plaintiff began working at West Gate Village on October 11, 2000, as an RN charge nurse. (Barnes depo. pp. 39, 53). Plaintiff's duties included treatment and medication functions typically performed by an LPN. (Gulley Decl. ¶ 8). Louis Gulley, an African American, was plaintiff's supervisor at all times during plaintiff's employment. (Gulley Decl. ¶ 3, Barnes depo. p. 60). Gulley reported to Mark Manning, the administrator of West Gate Village, who is Caucasian. (Manning Decl.

¶ 4, Gulley Decl. ¶ 15).

Plaintiff resigned from West Gate Village in April 2001 and began working for West Florida Hospital. (Barnes depo. pp. 65-66, 69-70). Plaintiff was terminated from West Florida Hospital on June 11, 2001, (Barnes depo. p. 70). She was rehired by West Gate Village as an RN Charge Nurse. (Barnes depo. pp. 70-74). In September 2001, plaintiff was reassigned to be an RN Supervisor. (Barnes depo. pp. 74, 98). Plaintiff later became dissatisfied with her assignments and shift because she wanted an RN assignment that would give her a fixed schedule on the day shift. (Barnes depo. pp. 90, 99-100).

Plaintiff wrote three letters to West Gate's management during the course of her employment there. On November 5, 2001, plaintiff wrote a letter to Manning inquiring about why she had not yet begun to accrue vacation and sick time. (Barnes depo. pp. 76-78, 80 & Ex. 9). Manning met with plaintiff and explained that she would not be eligible for vacation time until a year after her rehire date. (Barnes depo. p. 77; Manning Decl. ¶ 8). Plaintiff admits that the denial of vacation time was not racially based. (Barnes depo. pp. 80-81).

On April 19, 2002, plaintiff wrote a letter to Manning and Gulley concerning her schedule and inquiring as to why she did not receive any of three RN positions that had become available. (Barnes depo. p. 97 & Ex. 10). Manning and Gulley met with plaintiff and explained why she had not been assigned to the positions. (Manning Decl. ¶¶ 9-10). One of the positions was not an RN position and was filled by an unlicensed nurse who is African American. (Barnes depo. pp. 87-89). The two RN positions were given to RNs who had more experience, or who Gulley and Manning felt were better suited for the position. One of the RNs assigned to the new position is African American. (Barnes

depo, pp. 81-83).

On July 12, 2002, plaintiff wrote a third letter to Manning and Gulley expressing her concerns that her schedule had gotten worse and she had been taken off the "on-call list" after her April 19, 2002, letter and alleging that Gulley had threatened to terminate her. (Barnes depo. pp. 109-110 & Ex. 12). Manning and Gulley again met with plaintiff to discuss her concerns. (Barnes depo. p. 105; Manning Decl. ¶ 11). According to Manning and Gulley, they had concerns about plaintiff's job performance, nursing skills, and judgment. (Gulley Decl ¶ 18; Manning Decl. ¶¶ 11-12).

On July 29, 2002, plaintiff sent another letter to Crowne's corporate headquarters complaining about several of the same issues she had raised in her previous letters. (Barnes depo. pp. 111, 116 & Ex. 13). Neither this, nor any of the previous letters, mentioned race or racial discrimination.

Plaintiff received her annual performance evaluation in June 2002. (Barnes depo pp. 94-96). Gulley rated plaintiff at below normal in two out of ten categories. (Barnes depo. pp. 94-96). The evaluation also included comments that stated that plaintiff needed to "improve her communication skills and needed to ask[] more questions, be[] true to herself about what she doesn't understand," "slow[] down, and recheck[] what she's done" and "be more self-motivated." Gully stated in the evaluation that plaintiff could improve "if she will identify herself as being a part of the management team, and not become defensive or retaliatory when other staff report her actions." The evaluation also stated that at times plaintiff does not follow though with assigned tasks. Plaintiff admits that the comments were not the result of racial bias. (Barnes dep. p. 96).

On August 5, 2002, Gulley issued plaintiff a disciplinary written warning for improperly transcribing a medication order on the wrong patient's chart. (Barnes depo. pp. 122-23 & Ex. 14).

Plaintiff admits to the mistake. (Barnes depo. p. 123, 125). Gulley considered this to be a serious error. (Barnes depo. p. 122, Gulley Decl. ¶ 20).

On August 15, 2002, plaintiff received a written warning for exhibiting rude and discourteous behavior toward a co-worker. (Barnes depo. pp. 131-32 & Ex. 15). Plaintiff had been informed that she would need to stay late that day because her replacement could not come in and plaintiff responded "Hell, this is ridiculous. I'm calling Mr. Manning." (Barnes depo. p. 131 & Ex. 15). Plaintiff admits that she said "hell" and that such a statement violates the company's policies. (Barnes depo. p. 132-33, 138).

On November 29, 2002, plaintiff filed an EEOC charge of discrimination against Crowne alleging that she had been discriminated against when she did not receive the Care Plan Nurse position, when she was taken off the on-call list, and when she lost vacation time and seniority afer she left West Gate Village for a period of time. (Barnes depo. pp. 139-44 & Ex. 16). Plaintiff also alleged that she had been retaliated against for complaining about these issues. (Barnes depo. p. 143). On January 21, 2003, plaintiff and Crowne attempted to mediate the EEOC charge, but the parties were unable to resolve the matter. (Manning Decl. ¶ 18).

On March 4, 2003, an African American LPN reported that plaintiff had left medication in a drawer of the medicine cart. (Barnes depo. Ex. 18; Manning Decl. ¶ 28; Gulley Decl. ¶ 29). The RN Supervisor states that, upon investigating the report, she discovered that plaintiff had failed to administer medication. (Manning Decl. ¶ 28 & Ex. G, Gulley Decl. ¶ 29, Barnes depo. Ex. 18). Nurses who are unable to administer medication are supposed to write an explanation on the back of the MAR indicating why it was not administered. (Barnes depo. pp. 162-169). Plaintiff admitted that she

improperly left the medicine in the cart and that she forgot to write on the MAR any explanation as to why it was not administered. (Barnes depo. pp. 162-63).

On March 5, 2003, Manning and Gulley met with plaintiff to issue plaintiff a written warning for two separate incidents that occurred in February, her failure to administer a medicine patch and her failure to change bandages. (plaintiff depo. pp. 152-53 & Ex. 17). The written warning stated that any further violation of the employee handbook or failure to follow facility policies will result in termination. (plaintiff depo. Ex. 17). Also in February, Manning and Gulley received a complaint from an African American LPN, who stated that plaintiff threatened to slap her. (Manning Decl. ¶ 26; Barnes depo. Ex. 18). Plaintiff denies that the incident occurred, but several employees confirmed the LPN's story. (Manning Decl. ¶ 27 & Ex. F, Gulley Decl. ¶ 28).

On March 6, 2003, plaintiff was notified that she was suspended pending investigation into the recent incidents involving unacceptable performance in resident care and alleged threats towards other employees at the nursing home. (Barnes depo. p. 160 & Ex. 19). After investigating the incidents, Manning and Gulley concluded that plaintiff violated Crowne's medical care procedures and basic standards of nursing care on several occasions. (Barnes depo. p. 173 & Ex. 19). Manning and Gulley met with plaintiff on March 18, 2003, and informed her of their decision to terminate plaintiff.

**LEGAL ANALYSIS**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.
The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving

party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**II. Plaintiff's Claims**

Plaintiff claims that Crowne Investments discriminated against her on the basis of her race and in retaliation for filing a charge of discrimination with the EEOC. Specifically, plaintiff alleges in Count I that she was denied the same terms and conditions of employment as enjoyed by white co-workers and in Count II that she was suspended and later terminated as a result of racial discrimination and retaliation.

**A. Racial Discrimination**

In her response brief, plaintiff only addressed her claim of retaliation. The court notes that courts commonly grant summary judgment as to claims which the plaintiff failed to address in response to a summary judgment motion. See e.g. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001); Boex v. OFS Fitel, LLC, 339 F.Supp.2d 1352, 1371 (N.D. Ga. 2004). "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the

complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted). The court deems plaintiff's claims of racial discrimination to be abandoned, see id., and defendant's motion for summary judgment as to plaintiff's claims of racial discrimination is due to be granted.

Even if plaintiff had not abandoned her claim of racial discrimination, summary judgment on that count still is due to be granted based on the evidence before the court. A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence. Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)). As the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlat[e] to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). The court finds that plaintiff has not submitted any evidence which qualifies as direct evidence of racial discrimination in employment. Plaintiff has, in fact, offered little or no evidence concerning racial discrimination. Defendant submitted excerpts from plaintiff's deposition as well as the declarations of Mr. Manning and Ms. Gulley and numerous documents regarding the facts of this case. However, plaintiff submitted only her own three page declaration which, for the most part, addresses facts regarding her claim of retaliation. Plaintiff makes no reference to the evidence contained in defendant's factual submissions. The court finds that none of the evidence submitted by either party qualifies as direct evidence of discrimination.

Plaintiff may attempt to show discrimination based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under the McDonnell Douglas framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir.1997)).

> In order to make out a prima facie case of discriminatory termination on account of race, plaintiff must show: (1) [s]he is a member of a protected class; (2) [s]he suffered an adverse job action; (3) h[er] employer treated similarly- situated employees outside his classification more favorably; and (4) [s]he was qualified to do the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997) (citations omitted). "

Potts v. Conecuh-Monroe Counties Gas Dist., 2000 WL 1229838, *17 (S.D. Ala. 2000). The first prong is satisfied as it is undisputed that plaintiff is a member of a protected class. Defendant disputes that plaintiff was denied the same terms and conditions of employment as enjoyed by white co-workers as alleged in Count I and plaintiff has offered little evidence in support of that contention. Plaintiff has not made the necessary showing that Crowne's decisions not to assign her to the Care Plan RN position or to assign her as an on-call nurse were "serious and material change in the terms, conditions, or privileges of employment." See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). "[A]pplying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on [her] disagreement with [her] employer's reassignment of job tasks." Id. at 1244. The court notes that the denial of lateral transfers are generally not considered to be adverse employment actions. See e.g. Gaddis v. Russell Corp., 242 F.Supp.2d 1123, 1145-46 (M.D. Ala. 2003)(denial of employee's transfer did not constitute an adverse employment action where there was no evidence that the position was a promotion, or otherwise entailed a significant difference in pay, benefits, or responsibilities); Smith v. Ala. Dep't of Corrections, 145 F.Supp.2d 1291, 1298 (M.D. Ala. 2001) (no adverse employment action where plaintiff proffered no evidence showing the position to which he sought a transfer was a promotion). The court finds that plaintiff has not established the second prong of a prima facie case as to Count I of the complaint.

The court finds that plaintiff also has not demonstrated that she was treated less favorably than

a similarly situated, non-minority employee when Crowne decided not to assign her to the Care Plan RN position or when Crowne decided not to assign her as an on-call nurse. Plaintiff has not shown that the RN who was assigned to the Care Plan position was similarly situated to plaintiff. Likewise, plaintiff has not demonstrated that she was treated differently than a similarly situated employee when she was suspended or terminated. There is no evidence or that Crowne did permit or would have permitted a non-minority employee with the same record as plaintiff to continue employment at West Gate Village. Plaintiff has not established a prima facie case of racial discrimination.

Even if plaintiff had not abandoned this claim and had established a prima facie case, defendant would still be entitled to summary judgment on plaintiff's claims of racial discrimination. Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)). If the defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. Id. "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." Id. (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982) (citing Haring v. CPC International, Inc., 664 F.2d 1234, 1239-40 (5th Cir. 1981)). However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)). It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communication, 738 F.2d 1181, 1187 (11th Cir. 1984).

In this case, Crowne has proffered legitimate reasons for not assigning plaintiff to the Care Plan position, for not assigning her to be on-call, and for suspending and ultimately terminating plaintiff. Plaintiff has not offered sufficient evidence that those reasons were pretextual in order to prevail. Plaintiff has, in fact, provided almost no evidence of pretext relating to her claims of racial discrimination. Therefore, defendant's motion for summary judgment is due to be granted as to plaintiff's claims of racial discrimination.

**C. Retaliatory Discharge Claim**

Plaintiff alleges that the defendant suspended and later discharged her in retaliation for her filing a complaint of racial discrimination with the EEOC. "[T]he same analytical framework applies to retaliation claims as applies to other employment discrimination claims, including the availability of the McDonnell Douglas presumption." Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir. 1999) (citing Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir.1993)). Plaintiff has not proffered any direct evidence of retaliation.

To establish a prima facie case of retaliatory discharge based on circumstantial evidence, the

plaintiff must show: "(1) that [s]he engaged in a statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the adverse action and h[er] protected expression."  Lucas v. W. W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001) (citations omitted).   The plaintiff's filing of complaints claiming discrimination is clearly a protected expression and being terminated is certainly an adverse employment action.  However, it is more than questionable whether plaintiff has established a causal link between the two.

Plaintiff states in her declaration that following mediation "it appeared" that she was treated differently and "it seemed as though" there was always tension in the air. (Barnes Decl. ¶9).  Plaintiff states that she "felt like they were always getting on me because mediation did not end the way they had expected." (Barnes Decl. ¶ 11).  She further states that she believes retaliation was Crowne's motivation for acting the way management appeared to be acting and for deciding to suspend and then terminate plaintiff.  However, as Crowne correctly argues, these statements do not provide specific facts, but are merely plaintiff's subjective beliefs.  "Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact."  In re World Access, Inc., 310 F.Supp.2d 1281, 1289 (N.D. Ga. 2004) (citing Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000) and Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir.1983)).  As stated previously regarding the standard for summary judgment, the non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Plaintiff contends that the temporal proximity of her suspension and termination to the unsuccessful conclusion of the mediation of plaintiff's EEOC charge is evidence of a causal link. However, even if temporal proximity was sufficient to establish a prima facie case, temporal proximity alone is insufficient evidence of pretext to survive summary judgment. Padron v. BellSouth Telecommunications, Inc.,  196 F.Supp.2d 1250, 1257 (S.D. Fla. 2002) ("Standing alone against Defendant's strongly supported legitimate reason for terminating [plaintiff], temporal proximity does not

amount to more than a scintilla of evidence of retaliation."); Wellenbusher v. National Service Industries, Inc., 2003 WL 23218084, *4 (S.D. Fla. 2003) ("Simply pointing out the fact that [plaintiff] was terminated soon after she announced her pregnancy does not meet the summary judgment requirement for specific facts showing that there is a genuine issue."); Swanson v. General Servs. Admin., 110 F.3d 1180, 1188 (5th Cir.), cert. denied, 522 U.S. 948, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997)("Close timing between an employee's protected activity and an adverse action against him may provide the "causal connection" required to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."); see also Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir.1993); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278 (11th Cir.1997) (ADA); Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir.1996) (First Amendment retaliation); Dollar v. Shoney's, Inc., 981 F.Supp. 1417, 1420 (N.D.Ala.1997) (FMLA); Dillon v. Carlton, 977 F.Supp. 1155, 1160 (N.D. Fla.1997) (FMLA), aff'd, 161 F.3d 21 (11th Cir.1998) (Table). Crowne has proffered legitimate reasons for suspending and terminating plaintiff. Several incidents had been reported to Manning and Gulley involving plaintiff's unacceptable performance in resident care and her alleged threats towards other employees at the nursing home. Although plaintiff contends that reports of her performance and behavior problems were false, an employment decision is not discriminatory because it was based on a mistaken belief. Silvera v. Orange County School Bd., 244 F.3d 1253, 1261 (11th Cir. 2001). The evidence shows that the incidents were reported by different people and were investigated by Crowne before the decision was made to terminate plaintiff. The court finds that plaintiff has not provided sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for the employer's decision.

**CONCLUSION**

For the foregoing reasons, the court finds that the motion of defendant, Crowne Investments,

Inc., for summary judgment (Doc. 25), is **GRANTED**.

**DONE and ORDERED** this the16th day of May, 2005.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE